UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JESSIE NOBLES | DOCKET NO.: 3:11-CV-311-JJB-SCR |
| VERSUS | JUDGE: JAMES J. BRADY |
| TOWN OF KILLIAN, KILLIAN POLICE DEPARTMENT, CHIEF DENNIS HILL, AND OFFICER SHANNON WRIGHT MACK | MAGISTRATE: RIEDLINGER |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON BEHALF OF OFFICER SHANNON WRIGHT MACK**

The defendant, Officer Shannon Wright Mack ("Officer Mack"), submits this memorandum in support of his Motion for Summary Judgment under Rule 56. The federal claims asserted by Jessie Nobles ("plaintiff") should be dismissed because Officer Mack is entitled to the defense of qualified immunity because there is no genuine issue of material facts as to the 42 U.S.C. § 1983 claims. The plaintiff's state law claims of assault and battery, false imprisonment and illegal imprisonment, and intentional infliction of emotion distress asserted against Officer Mack should also be dismissed because Officer Mack had probable cause to arrest the plaintiff, and the plaintiff cannot support his allegations.

**STATEMENT OF THE CASE**

**I.  Allegations of the Complaint and Procedural History**

On May 11, 2011, the plaintiff filed a Petition for Damages in this Court alleging violations of 42 U.S.C. §1983, asserting that Officer Mack acted under color of law and violated the 4th and 14th Amendments to be free from an unreasonable search and seizure and to be free from cruel and unusual punishment and excessive force. He also alleges state law claims of assault and battery, false arrest and illegal imprisonment, and intentional infliction of emotional

distress. There allegations arise out of Jessie Nobles's arrest on May 29, 2011. Officer Mack seeks dismissal of the plaintiff's lawsuit on the basis of qualified immunity and because the plaintiff's have no evidence to support the state law claims.

## II. Background

Officer Mack was a police officer employed by the Killian Police Department who was "working the warrants," and had been for some time, as assigned to him by Chief Hill.[1] In fact, the warrants stayed on the side of the desk for any officer to serve if there was free time to do so.[2] The outstanding warrants were divided into areas of town, and, on May 29, 2010, Officer Mack had three warrants for the Union Landing Road area that he was executing.[3] His intention was not to arrest anyone, but to meet with the people that had outstanding warrants, explain the warrants, and request that they go to the police station to make arrangements for payment.[4] As he put it, "I was just basically delivering paperwork that day to ask them [to] come in and take care of these issues."[5]

He first went to the plaintiff's neighbor's house to execute the warrants, but the residents were not home.[6] There were two houses on the street that didn't have addresses, so he asked the people that he saw outside where the Nobles' residence was located, and they pointed at one of the houses.[7] Officer Mack knocked on the door and first spoke with Carl Nobles, the plaintiff's father, regarding the warrant for his outstanding tickets.[8] When Jessie came out the door, he

---

[1] Exhibit B – Deposition of Officer Mack, pp. 62, 119; Exhibit D – Deposition of Chief Dennis Hill, pp. 34-35
[2] Exhibit B – Deposition of Officer Mack, p. 119; Exhibit D – Deposition of Chief Dennis Hill, p. 35
[3] Exhibit B – Deposition of Officer Mack, p. 62; Exhibit D – Deposition of Chief Dennis Hill, p. 35
[4] Exhibit B – Deposition of Officer Mack, pp. 67, 171, 174, 176; Exhibit D – Deposition of Chief Dennis Hill, pp. 35-36
[5] Exhibit B – Deposition of Officer Mack, p. 67
[6] Exhibit B – Deposition of Officer Mack, pp. 62-63
[7] Exhibit B – Deposition of Officer Mack, p. 63
[8] Exhibit B – Deposition of Officer Mack, p. 63; Exhibit C – Deposition of Jessie Nobles, pp. 72-73

2942594_1.DOCX

Case 3:11-cv-00311-JJB-SCR   Document 17-1   06/15/12   Page 2 of 14

recognized Officer Mack.[9] Jessie had an attitude towards Officer Mack at this time, and questioned why Officer Mack was there.[10] Officer Mack advised Jessie to wait by the car while he and Carl Nobles finished discussing what needed to be done for the outstanding ticket and warrant.[11] Jessie admitted in his deposition that when asked to walk to the car, he didn't immediately comply with the request.[12] When Officer Mack was done talking to the plaintiff's father and then began to talk to plaintiff about why he was not complying and why he had an attitude, Officer Mack asked Jessie, "Well, what is the problem here?" to which Jessie replied, "I just don't f-ing like you."[13] Officer Mack didn't know who Jessie was or what the problem was, but Jessie said that Officer Mack owed him money.[14] Jessie testified in his deposition, however, that he doesn't think that Officer Mack ever recognized him or knew who he was.[15] As Officer Mack began to explain to Jessie that he was there as a courtesy for the warrants and the unpaid tickets, Jessie aggressively lunged at Officer Mack, hit the papers that were in his hand, and the papers fell to the ground.[16] Jessie was already mad at Officer Mack and cussing at him in a somewhat aggressive manner when this outward, additional aggression was made that translated as an attempted assault.[17] When the plaintiff assaulted him, Officer Mack turned the plaintiff around, handcuffed him, read him the *Miranda* rights, and detained him.[18]

Officer Mack put the plaintiff into the car and called in the arrest to Livingston Parish to advise them that he was in route to the town hall to do paperwork related to the arrest.[19] As they

---

[9] Exhibit C – Deposition of Jessie Nobles, pp. 73-74
[10] Exhibit B – Deposition of Officer Mack, p. 63; Exhibit C – Deposition of Jessie Nobles, p. 74
[11] Exhibit B – Deposition of Officer Mack, pp. 63-64; Exhibit C – Deposition of Jessie Nobles, p. 74
[12] Exhibit C – Deposition of Jessie Nobles, pp. 76-77
[13] Exhibit B – Deposition of Officer Mack, p. 63
[14] Exhibit B – Deposition of Officer Mack, pp. 64-65
[15] Exhibit C – Deposition of Jessie Nobles, p. 83
[16] Exhibit B – Deposition of Officer Mack, pp. 65, 68; Exhibit D – Deposition of Chief Hill, p. 41
[17] Exhibit B – Deposition of Officer Mack, pp. 68-69
[18] Exhibit B – Deposition of Officer Mack, p. 65; Exhibit D – Deposition of Chief Hill, p. 41
[19] Exhibit B – Deposition of Officer Mack, pp. 66, 71

were riding to the station, Jessie "cooled off" and was able to explain why he had been so mad when he saw Officer Mack.[20] Jessie told Officer Mack that he had worked for Officer Mack's dad at one point and he hadn't been paid.[21] Jessie admitted that Officer Mack still didn't know who he was or recognize him.[22] Officer Mack also talked to the chief of police, Dennis Hill, during this time about what happened.[23] While talking with Chief Hill, Officer Mack advised him that, as far as the warrant for the unpaid tickets, Officer Mack could just advise Jessie to come back later to take care of those.[24] Chief Hill also left it up to Officer Mack to decide whether he wanted to press charges for the assault, and Officer Mack said that Jessie had calmed down, so he did not feel it was necessary to press charges.[25] Officer Mack advised Jessie that the warrant for the unpaid tickets was still active and that he needed to come in during the week to discuss it with Chief Hill. Since Officer Mack was going to release Jessie and not press charges, he took off the handcuffs and told Jessie to call his parents to pick him up. [26] Officer Mack even offered to drive Jessie halfway, at Gun Swamp Road, so that they would not have to drive the full distance to the police station. [27] At the meeting point, Jessie got into the car with his parents and went home.[28]

---

[20] Exhibit B – Deposition of Officer Mack, p. 72
[21] Exhibit B – Deposition of Officer Mack, p. 72; Jessie has alleged that he worked for one of Officer Mack's private companies and that Officer Mack owed him money. (See Petition for Damages and Jessie deposition, pp. 42-44.) Officer Mack has testified that he has no recollection of Jessie working for him or his company. (See Deposition of Officer Mack, p. 96.) This is consistent with Jessie's statements that Officer Mack did not recognize Jessie when the warrants were being executed or during the arrest.
[22] Exhibit C – Deposition of Jessie Nobles, p. 84
[23] Exhibit B – Deposition of Officer Mack, pp. 73, 89; Exhibit D – Deposition of Chief Hill, pp. 40-42, 140
[24] Exhibit B – Deposition of Officer Mack, pp. 74, 89, 91; Exhibit D – Deposition of Chief Hill, pp. 140-141
[25] Exhibit B – Deposition of Officer Mack, pp. 74-75, 89, 91; Exhibit D – Deposition of Chief Hill, pp. 140-141
[26] Exhibit B – Deposition of Officer Mack, pp. 75, 90; Exhibit C – Deposition of Jessie Nobles, p. 84
[27] Exhibit B – Deposition of Officer Mack, p. 75; Exhibit C – Deposition of Jessie Nobles, pp. 84, 125-126
[28] Exhibit B – Deposition of Officer Mack, p. 75; Exhibit C – Deposition of Jessie Nobles, pp. 84, 125-126

# LAW AND ARGUMENT

I.  **Standard for Summary Judgment**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" on all or part of any claim. Fed. R. Civ. P. 56(c), 56(b).  "Properly used, summary judgment helps strip away the underbrush and lay bare the heart of the controversy."  *Kennedy v. Mesa, Inc*., 1998 WL 182670, 1 (W.D. La. 1998).

In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court recognized that summary judgment may be granted when a party fails to come forward with sufficient facts to establish the existence of a genuine issue as to an element essential to that party's case.  The Supreme Court stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  **The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make sufficient showing on an essential element of her case with respect to which she has the burden of proof.**

*Celotex, supra* at 322-23. [Emphasis added].

The court in *Celotex, supra*, further noted that the burden on the moving party of demonstrating the absence of a genuine issue of material fact may be discharged by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.

*Celotex, supra* at 325.  Once the mover meets this initial burden, if the non-moving party fails or cannot make a showing sufficient to establish the existence of all elements essential to his case that he will bear the burden of proving at trial, summary judgment is appropriate and should be rendered against the non-moving party.

The non-movant may not rest on the mere allegations of his pleadings as a means of establishing a genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  He must designate specific facts supported by discovery or affidavit showing that there is a genuine issue for trial.  *Celotex, supra*, at 323.  The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  "[A] mere scintilla [of evidence] is not enough to defeat a motion for summary judgment."  *Davis v. Chevron U.S.A., Inc*., 14 F.3d 1082, 1086 (5th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986)).

II.  **This Court Should Exercise Supplemental Jurisdiction over the State Law Claim**

Under the doctrine of pendent jurisdiction, a federal court has the constitutional power to hear a state law claim if it is closely related to another federal claim.  *Robertson v. Neuromedical Center*, 161 F.3d 292 (5th Cir. 1998) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)).  Pendent jurisdiction has its basis in the interests of both the parties and the judicial system in having all of the claims between litigants, both federal and state, resolved in one suit.  *Joseph v. Zachary Manor Nursing Home*, 729 F.Supp 41 (M.D. La. 1990), *affirmed*, 929 F.2d 697 (5th Cir. 1991), *cert. denied*, 502 U.S. 912, 112 S.Ct. 310, 116 L.Ed.2d 253 (1991).  In making the decision on whether to hear supplemental claims, the court must consider both the statutory provisions of 28 U.S.C. §1367(c) and the balance of the relevant

factors of judicial economy, convenience, fairness and comity. *Bass v. Parkwood Hospital*, 180 F.3d 234 (5th Cir. 1999).

The state claim in this case do not involve novel or complex state law issues. See, § 1367(c)(1). They are essentially companion claims to the federal constitutional claims. Because they are similar, the state claims in this case do not substantially predominate over the federal claims in either the requirements of proof, remedies, or issues. See, § 1367(c)(2); *Gibbs*, 86 S.Ct. at 1139. The elements of the state claims do not require the fact finder to consider any additional factual issues than those needed to resolve the federal claims. Further, all federal claims initially brought against defendants remain pending, and there are no "exceptional circumstances" which present "compelling reasons" for declining supplemental jurisdiction. See, § 1367(c)(3) and (4).

Judicial economy, convenience and fairness dictate that all of plaintiff's claims arising out of the May 2010 Memorial Day incident, should be resolved in one judicial proceeding. The state claims can be readily decided on the facts at issue in the federal claims. Furthermore, trial of the issues together would not engender confusion for a jury. This Court can, and should, retain jurisdiction over the state law claims against the defendant in order to affect an orderly resolution to this litigation.

### III. The Plaintiff's Federal Claims against Officer Mack should be Dismissed.

#### A. There is No Genuine Dispute as to Any Material Fact Exists as to Plaintiffs' 42 U.S.C. § 1983 Claims as Officer Mack is entitled to qualified immunity

Qualified immunity protects government officials performing discretionary functions from civil liability under federal law unless their conduct violates a "clearly established [federal] statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This doctrine

"balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

In *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court mandated a two-step sequence for resolving qualified immunity claims. First, a court must decide whether the facts establish a violation of a constitutional right. *Id*. at 201. Second, the court must then decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id*. Recently, however, in *Pearson*, the Supreme Court reconsidered the *Saucier* approach and determined that "while the [two-step] sequence […] is often appropriate, it should no longer be regarded as mandatory." *Pearson*, 555 U.S. at 236. Instead, lower courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id*. In other words, the Supreme Court relaxed its previous requirement that courts always evaluate whether the conduct in fact violated a constitutional right before evaluating whether the right at issue was clearly established. The *Pearson* Court noted, however, that the *Saucier* approach is often beneficial, such as in cases where it "may be difficult to decide whether a right is clearly established without deciding precisely what the constitutional right happens to be." *Id*.

In *Anderson v. Creighton*, 438 U.S. 635, 639-40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the court explained the second prong of the analysis and stated that "clearly established" for the purposes of qualified immunity means that

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.

*Id.* Qualified immunity thus protects an official who reasonably infringes upon a constitutional right. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). A defendant's conduct will be considered objectively reasonable unless **all reasonable officers in the defendant's circumstances** would have known that the defendant's conduct violated the plaintiffs' federal rights. See *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (emphasis added).

Officer Mack is entitled to qualified immunity with regard to the plaintiffs' § 1983 claims because he can satisfy the second prong of the qualified immunity analysis. The reasonableness of an official's actions must be assessed in light of "the facts available to him at the time of his action and the law that was clearly established at the time of the alleged acts." *Hays County Guardian v. Supple*, 969 F.2d 111, 125 (5th Cir. 1992). Officer Mack's actions were objectively reasonable. When the plaintiff, who had already been cussing at Officer Mack and had been non-compliant, lunged at Officer Mack, Mack detained him and arrested him for assault. Moreover, Officer Mack had a valid warrant to arrest the plaintiff for the outstanding tickets, admits that Officer Mack was at his house for a valid reason, and that there was a right to have an arrest warrant executed that day because he did have outstanding tickets.[29] He also admitted that he was non-compliant with Officer Mack's requests and that this incident more than likely wouldn't have happened with any other officer. He stated that the reason that he was non-

---

[29] Exhibit C – Deposition of Jessie Nobles pp. 126-127, 131, 148, 160

compliant and this incident occurred is because he didn't like Officer Mack.[30] Therefore, when Jessie lunged at Officer Mack after the on-compliance and cursing by the plaintiff, Officer Mack was reasonable to interpret that as an assault and arrest the plaintiff. Because Officer Mack's actions were reasonable, he is entitled to qualified immunity.

### B. Plaintiff's Due Process Claims Must also Fail

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive a person of life, liberty or property without due process of law." The touchstone of due process is protection of the individual against arbitrary action of government. *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974). Supreme Court cases have repeatedly indicated that only the most egregious official conduct can be said to be "arbitrary in the constitutional sense." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 129, 112 S.Ct., 1061, 1071, 1171, 117 L.Ed. 261 (1992). The threshold question in a due process challenge to abusive conduct by a state actor is "whether the behavior of the governmental officer is so egregious, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 1717, n. 8, 140 L.Ed. 2d 1043 (1998). This means conduct that is truly outrageous, uncivilized, and intolerable. *Lewis*, 118 S.Ct. at 1717. Plaintiff simply does not allege, and, based on the above examples, has no evidence to prove, any conduct that would rise to this level.

## IV. The Plaintiff's State Law Claims Must Fail

The plaintiff asserts several state law claims against Officer Mack, including assault and battery, false arrest and illegal imprisonment, and intentional infliction of emotional distress. Officer Mack is entitled to summary judgment as to each of these state law claims for the reasons explained below.

---

[30] Exhibit C – Deposition of Jessie Nobles pp. 131, 157, 159-160

### A. Assault and Battery

The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained. LA. CODE CRIM. PROC. ANN. art. 220. Louisiana law defines battery by a police officer as "physical attack of a private citizen by a police officer absent a valid arrest." *Ross v. Sheriff of LaFourche Parish*, 479 So.2d 506, 510 (La. App. 1 Cir. 1985). Ordinarily, the use of reasonable force to restrain an arrestee protects a police officer from liability for assault or battery. *Id.* at 511.

As discussed above in Section III, the arrest of the plaintiff was valid because the plaintiff's assaulted Officer Mack when he lunged towards Officer Mack and knocked the papers out of his hand. Additionally, Officer Mack had a valid warrant for arrest for the plaintiff for the outstanding tickets, which the plaintiff admitted numerous times throughout his deposition. As evidence that Officer Mack used reasonable force to detain the plaintiff, the plaintiff testified that he had no physical injuries, did not treat with any health care providers, and is not making a claim for any injuries, despite his Petition for Damages which alleges the opposite.[31] The plaintiff's own testimony establishes that the amount of force used by Officer Mack was not unreasonable. Therefore, the allegations of assault and battery must fail.

### B. False Arrest and Illegal Imprisonment

False imprisonment or arrest occurs when one arrests and restrains another against his will and without statutory authority. *Kyle v. City of New Orleans*, 353 So.2d 969 (La. 1977). Thus, the tort of false imprisonment consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention. *Tabora v. City of Kenner*, 94-

---

[31] Exhibit C – Deposition of Jessie Nobles pp. 117, 119

613 (La. App. 5th Cir.1/18/95), 650 So.2d 319, *writ denied*, 95-0402 (La.3/30/95), 651 So.2d 843.  For the reasons explained above in Section III, the arrest of plaintiff was valid because the plaintiff assaulted Officer Mack; therefore, the detention of plaintiff was not unlawful.  As such, plaintiff's false arrest claim lacks merit and must also fail.

### C. Intentional Infliction of Emotional Distress

To recover for intentional infliction of emotional distress, a plaintiff must establish:

1. That the conduct of the defendant was extreme and outrageous;
2. That the emotional distress suffered by the plaintiff was severe;
3. That the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

*Moresi v. State through Dept. of Wildlife and Fisheries*, 567 So.2d 1081 (La. 1990).  The standard for establishing this tort is very high.

> The conduct must be **so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community**.  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.  Not every verbal encounter may be converted into a tort; on the contrary, "some safety valve must be left through which irascible tempers may blow off relatively harmless steam."  Restatement, supra, comment d, § 46; Prosser and Keaton, The Law of Torts, § 12, p. 59 (5th ed. 1984).

*White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991)(Emphasis added).

The plaintiff must establish truly outrageous conduct to prevail on such a claim.  The Louisiana Supreme Court has held that "one who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *White*, 585 So.2d at 1209.

Plaintiff cannot establish a claim for intentional infliction of emotional distress. There is no evidence that Officer Mack's conduct was "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as atrocious and utterly intolerable in a civilized community." *Preis v. Durio*, 94-468 (La .App. 3 Cir. 11/2/94), 649 So.2d 600. Moreover, there is no proof that Officer Mack desired or otherwise intended to "inflict severe emotional distress," or otherwise knew that such distress is or was certain or substantially certain to result from his conduct," as addressed above. *Preis, supra*. Thus, plaintiff's claims for intentional infliction of emotional distress are without merit and should be dismissed accordingly.

## **CONCLUSION**

For the foregoing reasons, Officer Mack is entitled to summary judgment. Despite the plaintiff's allegations, Officer Mack has established that he did not violate the plaintiff's Fourth an Fourteenth Amendment rights. In addition, he has established that no genuine issues exist as to the plaintiff's other federal and state law claims. Accordingly, Officer Mack respectfully requests that this motion for summary judgment be granted, dismissing all of the plaintiff's claims against him, with prejudice, at the plaintiff's cost.

Respectfully Submitted,

/s/John F. Jakuback
John F. Jakuback (#21643) (T.A.)
john.jakuback@keanmiller.com
Melissa B. Caruso (#31091)
melissa.caruso@keanmiller.com
KEAN MILLER LLP
II City Plaza, 400 Convention Street, Suite 700
Post Office Box 3513 (70821)
Baton Rouge, Louisiana 70802
Telephone: (225) 387-0999
Fax: (225) 388-9133
***Attorneys for Officer Shannon Wright Mack***

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing *Motion for Summary Judgment on behalf of Officer Shannon Wright Mack* was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to the following counsel of record by operation of the court's electronic filing system:

Mr. J. Christopher Alexander, Sr., Esq.
Attorneys and Counselors at Law
3751 Government Street, Suite A
Baton Rouge, Louisiana 70806

Ms. Karen Day White
Louisiana Municipal Risk Assoc.
700 North 10th Street, Suite 440
Baton Rouge, Louisiana 70802

Mr. Jay Minos Simon, Esq.
Duncan & Simon, L.L.C.
8480 Bluebonnet Blvd., Suite G
Baton Rouge, Louisiana 70810-2879

Mr. Brian K. Abels
Boyer, Hebert, Abels & Angelle, LLC
1280 Del Este Avenue
Denham Springs, Louisiana 70726

Baton Rouge, Louisiana, this 15th day of June, 2012.

                                      /s/John F. Jakuback
                                        John F. Jakuback

2942594_1.DOCX

Case 3:11-cv-00311-JJB-SCR   Document 17-1   06/15/12   Page 14 of 14